UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

FOR ONLINE PUBLICATION ONLY

EMA KULWA,

                      Plaintiff,

- versus -

OBIAKOR OB/GYN P.C., AFAM
COMPREHENSIVE HEALTHCARE GROUP
a/k/a AFAM COMPREHENSIVE HEALTHCARE MEDICAL
GROUP, OBIAKOR MEDICAL PRACTICE, PLLC, and IFEANYI OBIAKOR,

                      Defendant.

ORDER

12-CV-1868 (JG) (MDG)

APPEARANCES

    By:    Michael Korsinsky
            Korsinsky & Klein LLP
            2926 Avenue L
            New York, NY 11210
            *Attorney for Plaintiff*

    By:    Anthony R. Mordente
            Anthony R. Mordente, P.C.
            160-29 Union Turnpike
            Fresh Meadows, NY 11366
            *Attorney for Defendants*

JOHN GLEESON, United States District Judge:

        I referred defendants' motion to vacate entry of default judgment to Magistrate Judge Marilyn Go on June 27, 2012. On September 24, 2012, Judge Go issued a Report and Recommendation ("R&R") applying the factors laid out in *Enron Oil Corp. v. Diakuhara*, 10 F.3d 90 (2d Cir. 1993) and recommending that the entry of default be vacated as to all

defendants. *See* R&R at 11-12. Plaintiffs sought review of that decision, and oral argument was heard on October 23, 2012.[1]

I conclude that (1) defendants had actual notice of the proceedings; (2) defendants made a tactical, willful decision not to answer; and (3) vacatur of entry of default will prejudice the plaintiff. Mindful of my duty to resolve any doubt in favor of the party seeking to vacate default, I conclude that there is no good cause justifying vacatur of entry of default. Accordingly, I respectfully decline to adopt Judge Go's recommendation and deny defendants' motion to set aside the entry of default. Entry of judgment is deferred pending an inquest on damages, and the case is referred to Judge Go for a report and recommendation on that issue.

A.      *Facts*

On March 26, 2010, plaintiff Dr. Ema Kulwa signed an Employment Agreement with Obiakor OB/GYN P.C. (which was signed by a representative from AFAM Comprehensive Healthcare Group). Specifically, plaintiff was employed as a physician in the specialty of Obstetrics and Gynecology. Employment Agreement 4, ECF No. 28. Kulwa alleges that she was not paid the money owed to her under the terms of the agreement. On March 13, 2012, counsel for plaintiff initiated email communication with defendant Dr. Ifeanyi Obiakor, requesting that he remit the money allegedly withheld. Obiakor – who identified himself in the email as Chairman and CEO of AFAM Comprehensive Healthcare Group located at 5205 Church Avenue, Brooklyn NY – acknowledged receipt of the email on March 19, 2012 and requested that plaintiff direct all subsequent communication to "our attorneys," the Mordente

---

[1] The record was expanded to include (1) email communication between Obiakor and plaintiff's counsel in March 2012; (2) a complete copy of the employment agreement between plaintiff and defendants; (3) entity information downloaded from the New York State Department of State, Division of Corporations showing that Obiakor, P.C. "is inactive as a result of a dissolution by proclamation dated January 25, 2012,"; (4) Certificates of Assumed Name for AFAM Comprehensive Healthcare Group and Obiakor OB/GYN; (5) and a copy of three New York state court decisions standing for the proposition that a party who receives actual notice of a lawsuit by means other than those authorized by statute cannot serve to bring a defendant within the jurisdiction of the court. *See* Supplemental Filings, Oct. 23, 2012, ECF No. 28, 29.

Law Firm. *See* Email, ECF No. 27. Kulwa contacted defense counsel and "outlin[ed] [the] claim so we can try to resolve it without having to come [to court]." Oral Argument Tr. at 12:15-17.

Unable to resolve the dispute, plaintiff filed the instant complaint on April 16, 2012, naming as defendants Obiakor, and three corporate entities: AFAM Comprehensive Healthcare Group ("AFAM"), Obiakor Ob/Gyn P.C., and Obiakor Medical Practice, PLLC. The complaint alleges breach of contract and fraudulent inducement and seeks $180,631.00 in damages.[2] Compl. ¶ 2, ECF No. 1.

Plaintiff served the defendants on April 25, 2012 and filed a copy of the affidavits of service on the docket. *See* ECF No. 2, 3, 4, 5.[3] At some point prior to the entry of default, counsel for the defendants "asked Plaintiff [to] consent [to an extension of time to file an Answer]" since defendants' counsel had been away at a wedding and "was sick" afterward and so needed additional time to answer. *See* Korsinsky Aff. ¶ 5, ECF No. 23; Oral Argument Tr. at 12:18-23. Counsel for defendants indicated that he would speak to his client, and be in touch. *Id.* at 14:10-15.

Defendants did not get back in touch and did not file an answer or any responsive motion. Plaintiff, "left with no choice but to file for default," *id.*, requested a certificate of default from the clerk of this Court on June 11, 2012. The Clerk entered default against all four defendants, and immediately thereafter plaintiff moved for entry of default judgment.

---

[2] For purposes of seeking entry of default, plaintiff waived her claim for unjust enrichment and punitive damages. Decl. in Supp. of Entry of Default Judgment ¶¶ 6-7, June 11, 2012, ECF No. 8.

[3] Anthony Yannucci from Elite Process Servers served each of the entity defendants at approximately 8:50 am on April 25, 2012 by delivering a true copy of the summons and the complaint to "Jane Doe" as "General Agent" for the entity defendant at the medical office, 5205 Church Avenue, Brooklyn NY 11203. Anthony Yannucci served Obiakor by delivering the complaint and summons to the same address, delivering it to Obiakor's "work" and handing it to "Jane Doe" a person of suitable age and also mailing a copy to this "work" address by first class mail.

Five days after plaintiff moved for a default judgment, each of the defendants filed answers to the Complaint, denying the allegations and laying out a series of affirmative defenses. I construed Defendants' answers as a motion to set aside the entry of default, and referred the motion to Judge Go.

On September 24, 2012, Judge Go issued the R&R recommending that the entry of default be vacated as to all defendants based on her assessment of the good cause factors laid out in *Enron*, 10 F.3d at 95-96. She concluded that the defendants' default was not willful because "it is unclear whether Mr. Obiakor . . . was aware of the lawsuit prior to the expiration of the defendants' time to answer," R&R at 6; that both the individual and corporate defendants raised a potential meritorious defense of improper service of process; and that the plaintiff failed to establish any prejudice other than delay.

On October 11, 2012, plaintiff filed an Objection to the R&R. Plaintiffs argued, *inter alia*, that defendants' "conclusory – and unbelievable – assertions" failed to meet their burden to establish improper service. Plfs. Memo. of Law 8, ECF No. 26; that the R&R's finding that the default was not "willful" was clearly erroneous; and that the plaintiff will suffer prejudice if the entry of default is vacated.

At oral argument, counsel for the defendant argued that service was improper as to each defendant. Since actual notice of a lawsuit is not sufficient to confer personal jurisdiction, defendants argued that their default was not willful. *See* Oral Arg. Tr. at 6:19-25. In addition to the meritorious defenses of lack of service, defendants also argued that "it is [not] too late" to present as a defense its contractual right to compel arbitration. *Id.* at 7:25.

B.	*Legal Standards*

Rule 55(a) of the Federal Rules of Civil Procedure confers on courts the discretion to enter default judgment against a party for failure to "plead or otherwise defend." Fed. R. Civ. P. 55(a). Once the Clerk has entered a party's default, the court may set it aside "for good cause[.]" Fed. R .Civ. P. 55(c). The Federal Rules do not define the term "good cause," but the Second Circuit has "established three criteria that must be assessed . . . (1) whether the default was willful; (2) whether setting aside the default would prejudice the adversary; and (3) whether a meritorious defense is presented." *Enron*, 10 F.3d at 96. Courts may also consider "relevant equitable factors," including "whether the failure to follow a rule of procedure was a mistake made in good faith and whether the entry of default would bring about a harsh or unfair result." *Id.* If examination of these factors establishes good cause, the entry of default should be vacated and the motion for default judgment denied. *See, e.g.*, *New York v. Green*, 420 F.3d 99, 110 (2d Cir. 2005).

The disposition of motions to vacate the entry of default is left to the sound discretion of the district court. *Enron*, 10 F.3d at 95. However, "[a district court's] discretion is nonetheless not unlimited . . . . [because of the] oft-stated preference for resolving disputes on the merits." *Id.* at 96; *see also Traguth v. Zuck*, 710 F.2d 90, 94 (2d Cir. 1983) ("An abuse of discretion need not be glaring to justify reversal." (internal quotation marks and brackets omitted)). Indeed, "defaults are generally disfavored and are reserved for rare occasions . . . ." *Enron*, 10 F.3d at 96. Therefore, in ruling on a motion to vacate entry of default, all doubts must be resolved in favor of the party seeking relief in order to ensure that disputes are resolved on their merits where possible. *Powerserve Int'l, Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001).

5

C.      *Discussion*

        1.      *Willfulness*

In the context of a default, "willfulness" refers to conduct that is "more than merely negligent or careless." *SEC v. McNulty*, 137 F.3d 732, 738 (2d Cir. 1998). Where a defendant ignores a complaint without action, a default is deemed willful. *United Bank of Kuwait PLC v. Enventure Energy Enhanced Oil Recovery Assocs. – Charco Redondo Butane*, 755 F.Supp. 1195, 1205 (S.D.N.Y. 1989); Black's Dictionary (defining "willfull" as "voluntary and intentional, but not necessarily malicious."). "Mere tardiness in meeting a court deadline does not establish a willful default," *Gov't Emps. Ins. Co. v. Right Solution Med. Supply, Inc.*, No. 12 Civ 0908, 2012 WL 6617422, at *3 (E.D.N.Y. Dec. 19, 2012).

Counsel for plaintiff credibly testified that Obiakor was in direct communication with plaintiff's counsel as early as March 2012 about the present dispute. Obiakor's March 19th email directed that all communication about plaintiff's demands for payment take place through "our" counsel, referring to all of the Defendants. Plaintiff followed this instruction and was in regular communication with defense counsel. As early as May 2012, the defendants – through counsel – sought extensions of time to file Answers. Counsel's knowledge of the suit is imputed to his clients; thus I conclude that all defendants had actual notice of the lawsuit prior to the entry of default. *See Harris v. United States*, 367 F.3d 74, 81 (2d Cir. 2004).

Obiakor's affidavit submitted in support of his motion to vacate also supports my finding that he had actual notice of the action and made a tactical decision not to answer. In his affidavit, Obiakor denied being "personally handed a copy of the plaintiff's summons and complaint," and indicated that his legal counsel informed him that, "since [he] was not personally handed a copy of the plaintiff's summon and complaint . . . the Court has not

6

acquired personal jurisdiction over [him]" and that, therefore, he "ha[d] a reasonable excuse for not having a timely responded to plaintiff's complaint." Aff. in Support of Mot. ¶ 18, ECF No. 21. Although the Federal Rules of Civil Procedure permit defendants to raise objections to service of process without waiving any objection to lack of personal jurisdiction, defendants opted instead to ignore the proceedings, believing that this was the preferred course. That was a tactical choice. *See Ins. Corp. of Ireland v. Compagne des Bauxites de Guinee*, 456 U.S. 694, 706 (1982) ("A defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds.").

Defendants' default was willful. It was informed by the advice of counsel and calculated to advance defendants' interests in delaying the day when they had to address the allegations levied against them. This is not a case in which the defendant made "a good faith effort to adhere to the rules of the court," *Enron*, 10 F.3d at 98. Based on the record before me and after the benefit of oral argument, I conclude that the defendants had actual notice of this litigation and made a tactical, willful decision not to respond.

## 2. *Meritorious Defenses*

The second *Enron* factor asks courts to consider whether a defendant can assert a meritorious defense, and the burden is on the defendant to establish such a defense. *See McNulty*, 137 F.3d at 740. To meet this burden, defendants need only "make a sufficient showing of a meritorious defense . . . [and] need not establish [the] defense conclusively," *id.* The defendants need only "present evidence of facts that, if proven at trial, would constitute a complete defense." *Id.* (internal quotation marks omitted). While a court is not obliged to vacate default where there is evidence of a meritorious defense, the Second Circuit has held that it is a

"key factor" in a court's consideration of a motion for a default judgment. G*reen*, 420 F.3d at 109.

Defendants raise two potential meritorious defenses. First they argue that service was ineffective and, thus, this Court lacks jurisdiction to enter judgment against them; and second that the employment contract contains a mandatory arbitration provision, which presents a complete defense the instant lawsuit. For the reasons that follow, I reject the former argument and agree with the latter.

(a) *Improper Service of Process*

Service of process is a required element of personal jurisdiction.[4] If personal jurisdiction is challenged in a responsive pleading, plaintiff has the burden to prove effective service by a preponderance of the evidence. *Banker's Trust Co. of California, N.A. v. Tsaukas*, 303 A.D.2d 343, 343 (2d Dep't. 2003). A defendant does not waive the defense of lack of personal jurisdiction by failing to appear. *See Sinoying Logistics Pte Ltd. v. Yi Da Xin Trading Corp.*, 619 F.3d 207, 213 (2d. Cir. 2010). However, where – as here – the defendants have failed to timely answer *and* are found to have had actual notice of the proceedings, the burden is on the defendant to establish the lack of proper service. *Cf. Burda Media, Inc. v. Vierteli*, 417 F.3d 292, 299 (2d Cir. 2005) ("[O]n motion to vacate a default judgment based on improper service of process where the defaulting defendant had actual notice of the original proceeding but

---

[4] The lawful exercise of personal jurisdiction by a federal court requires that plaintiff's service of process upon the defendant be procedurally proper. *See Omni Capital Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104 (1987) (holding that, in the absence of service of process (or waiver of service by the defendant), a court ordinarily may not exercise power over a party the complaint names as defendant)). In addition to service of process, there must be a statutory basis for personal jurisdiction that renders such service of process effective. Since a district court's personal jurisdiction is determined by the law of the state in which the court is located, we look to New York law to determine whether there is a statutory basis for jurisdiction. Third, the exercise of personal jurisdiction must comport with constitutional due process principles. *See Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 59-60 (2d Cir. 2012). If any of these three criteria is not met, the Court does not have personal jurisdiction over a defendant.

delayed in bringing the motion, the defendant bears the burden of proof to establish that the purported service did not occur.").

> i. *The Entity Defendants*

Service of process upon a domestic corporation is governed by Rule 4(h)(1) and Rule 4(e)(1) of the Federal Rules of Civil Procedure, which provide that service may be completed by:

> following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made
>
> or
>
> delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process and—if the agent is one authorized by statute and the statute so requires—by also mailing a copy of each to the defendant." an action brought in courts of general jurisdiction in the state

Fed. R .Civ. P. 4(e)(1), 4(h)(1)(B).

Plaintiff elected to effect service using the latter option. She indicates that she complied with the federal service of process requirements as to each of the entity defendants by serving a copy of the summons and complaint on "Jane Doe" as "General Agent" at the address of 5205 Church Avenue, Brooklyn NY 11203 on April 25, 2012. Process is effective if it is established that "Jane Doe" was "so integrated with the organization that [she] will know what to do with the papers." *Montclair Elecs., Inc. v. Electra/Midland Corp.*, 326 F.Supp. 839, 842 (S.D.N.Y. 1971) (internal quotation marks omitted).

Keeping in mind that *defendants* bear the burden of establishing that the agent to whom service was delivered lacked the authority to receive it, I conclude that defendants' conclusory denials that "Jane Doe" was not vested with authority to accept service (and that, in

9

fact, no one has authority to accept service on behalf of the entities) is not sufficient to meet their burden. *Pecarsky v. Galaxiworld.com, Ltd.*, 249 F.3d 167, 173 (2d Cir. 2001) (noting that a defendant "must present more than conclusory denials when attempting to show the existence of a meritorious defense.") Although it is true that an administrative employee such as a receptionist generally is not an "agent" authorized to accept service of process, numerous decisions have upheld service where a secretary or receptionist accepted the papers and the corporate defendant in fact received them. *See, e.g.*, *M'Baye v. World Boxing Ass'n*, 429 F.Supp.2d 652, 659-60 (S.D.N.Y. 2006) (upholding service on corporation where papers were left with receptionist at its offices and corporation had actual notice of suit); *Dai Nippon Printing Co. v. Melrose Publ'g Co.*, 113 F.R.D. 540, 544 (S.D.N.Y. 1986) (upholding service on corporation where papers were left on receptionist's desk after corporate officer refused them); *Kuhlik v. Atlantic Corp.*, 112 F.R.D. 146, 148 (S.D.N.Y. 1986) (upholding service on corporation where receptionist accepted papers, stating that "she could accept" papers, after she was unable to find someone else "in charge" who could accept them). Accordingly, I conclude that defendants have failed to make a sufficient showing of a meritorious defense of improper service.[5]

---

[5] Defendants' other arguments as to why the entity defendants were not properly served do not provide a sufficient showing of a meritorious defense of improper service. Defendants argued that the court lacks personal jurisdiction over the entity defendants sued under their "fictitious name," Oral Arg. Tr. at 8:16–9:14. However, in federal pleadings – as well as in New York – misnomer of a party can be corrected by an amendment, which will relate back to the date of the original pleading. *See* Fed. R. Civ. P. 15(c)(1)(C). Defendants also suggest that Obiakor Ob/Gyn, P.C. was not amenable to suit because it was "dissolved by proclamation back in January." Oral Arg. Tr. at 9:9-15. This entity was indeed declared "inactive" by Dissolution of Authority/ Annulment of Authority on January 25, 2012 due to non-payment of taxes. *See* Supplemental Filings, Oct. 23, 2012, ECF No. 28. However, "it is well settled that statutory dissolution by proclamation . . . is intended to encourage voluntary payment of franchise taxes. A dissolved corporation may sue or be sued . . . and process may be served by or upon it." *Estate of Essig v. 5670 58 Street Holding Corp.*, 836 N.Y.S.2d 492 (N.Y. Supp. Ct. 2007) (internal quotation marks and citation omitted).

*ii.  Dr. Obiakor*

Dr. Obiakor was sued in his individual capacity.  Rule 4(e)(1) of the Federal Rules of Civil Procedure provides that service upon an individual within a judicial district of the United States can be effected pursuant to the laws of the forum state in which the individual is to be served.  *See* Fed. R. Civ. P. 4(e)(1).  New York law permits service upon an individual by "delivering the summons within the state upon an individual of suitable age and discretion at the *actual place of business*, dwelling place or usual place of abode of the individual and then mailing a copy of the summons to either the last known residence or actual place of business.  N.Y. C.P.L.R. § 308(2) (emphasis added).  The term "actual place of business" includes the location that the defendant "has held out as [his or her] place of business." N.Y. C.P.L.R. 308(6).

The affidavit of the process server filed in this case indicates that he served the summons and verified complaint on the defendant on April 25, 2012 at 5205 Church Avenue, Brooklyn NY 11203, by delivering a true copy to a person of suitable age at Obiakor's "work" or actual place of business.  In support of this motion to vacate the entry of default, Obiakor submitted an affidavit asserting that he "do[es] not work in New York City," Aff. in Support ¶ 15, ECF No. 21, and "that [he is] in Nigeria for most of the year, [and does] not actually reside in New York and [is] not actually employed in the State of New York." *Id.* ¶ 38.

By crediting Dr. Obiakor's conclusory assertions that 5205 Church Avenue is not his actual place of business, the R&R improperly shifted the burden onto the plaintiff to establish effective service by a preponderance of the evidence.  Placing the burden on Obiakor where it belongs, I find that he fails to meet his burden of establishing that the medical office is not his actual place of business.  In an email from Obiakor to plaintiff's counsel in March 2012, Dr. Obiakor identifies himself as Chairman and CEO of AFAM Comprehensive Healthcare and lists

the 5205 Church Avenue address as his place of business. *See* Email, ECF No. 27. Taken together with the well-pleaded allegations in the Complaint that Dr. Obiakor "operates" Obiakor OB/GYN, *see* Compl. § 9, 10, I find that Dr. Obaikor was served at his actual place of business. His assertion that "he spends almost all of his time in his home country of Nigeria]," Aff. in Support ¶ 13, is not sufficient to satisfy his burden at this stage in the proceedings in light of my finding of actual notice. Thus I conclude that he has failed to make a sufficient showing that improper service is a meritorious defense.

    I must also consider whether the facts alleged in the complaint support piercing the corporate veil, since Dr. Obiakor did not sign plaintiff's employment agreement. *See Dow Chem. Pac., Ltd. v. Rascator Mar. S.A*., 782 F.2d 329, 342-43 (2d Cir. 1986) (affirming a district court's decision to enter a default judgment and pierce the corporate veil simultaneously). New York law establishes two requirements to pierce a corporate veil and hold an individual liable for corporate action: (1) the person must dominate the corporation, effectively dictating its action, *see Morris v. N.Y. State Dep't of Taxation & Fin*., 82 N.Y.2d 135, 141 (1993); and (2) the person must use that control to "abuse[] the privilege of doing business in the corporate form" by perpetrating a "wrong or injustice" against the plaintiff "such that a court in equity will intervene," *id*. at 142.

    In this case, the complaint adequately pleads the domination requirement by alleging that Obiakor was involved in all aspects of the decision to hire her. Compl. ¶ 35; *see Wm. Passalacqua Builders, Inc. v. Resnick Developers South, Inc*., 933 F.2d 131, 138-39 (2d Cir. 1991). As to the second requirement, the complaint alleges that Obiakor created sham entities to avoid the contractual obligations set forth in the employment agreement. Compl. ¶ 30-40. These allegations, which a court accepts as true on a default, *see Cotton v. Slone*, 4 F.3d 176, 181 (2d

Cir. 1993), are sufficient to pierce the corporation's veil and hold Obiakor personally liable for the breach of plaintiff's employment agreement. *See First Bank of the Americas v. Motor Car Funding, Inc.*, 257 A.D.2d 287, 294 (1st Dep't 1999).

(b) *Arbitration*

Defendants also argue that the arbitration provision is a potential meritorious defense. I agree. By attaching a copy of the Employment Agreement that contains a mandatory arbitration provision, I conclude that defendants have made a sufficient showing of a meritorious defense that, if established, would constitute a complete defense to the present lawsuit. Accordingly, the meritorious defense prong weighs in favor of Defendants.

3. *Prejudice*

The third factor, prejudice, refers to more than simple delay. *See Enron*, 10 F.3d at 98. "Rather, it must be shown that delay will result in the loss of evidence, create increased difficulties of discovery, or provide greater opportunity for fraud and collusion." *Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983) (citation and internal quotation marks omitted); *see also Green*, 420 F.3d at 110 (adding that delay may be prejudicial if it "thwart[s] plaintiff's recovery or remedy").

The R&R concluded that plaintiff failed to demonstrate that she would suffer any prejudice other than delay. Since "[d]elay alone is insufficient to establish prejudice," the R&R concluded that this factor weighed in favor of vacating entry of default. R&R at 7. I disagree that delay in the only prejudice demonstrated. On the record before me, I conclude that vacating the entry of default would prejudice the plaintiff in ways beyond mere delay. If entry of default is vacated, there is a possibility that plaintiff will, after litigating for months, be required to arbitrate. Or, in other words, as a sole result of defendants' willful decision to neither answer the

13

complaint nor move to arbitrate, plaintiff will be required to engage in piecemeal resolution of her dispute. *Cf. Morewitz v. West of Engl. Ship Owners Mut. Prot. & Indem. Ass'n*, 62 F.3d 1356, 1366 (11th Cir. 1995) ("Prejudice has been found in situations where the party seeking arbitration allows the opposing party to undergo the types of litigation expenses that arbitration was designed to alleviate."). I find credible plaintiff's representations that she attempted to resolve this dispute without resort to litigation. Accordingly, I find the risk of piecemeal resolution of this employment dispute to be evidence of prejudice that weighs against vacating entry of default.

D.      *Application of the* Enron *Factors*

Even though the defendants have presented a potentially meritorious defense – the presence of an arbitration clause – I decline to vacate entry of default in light of the strong evidence of willful default in this record.[6] A finding of willfulness can, on its own, support a finding of good cause support entry of default judgment. *See State St. Bank & Trust. Co. v. Inversiones Errazuriz Limitada*, 374 F.3d 158, 174 (2d Cir. 2004) (affirming denial of relief from default judgment where prejudice not established but no meritorious defense shown); *American Alliance Ins., Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996) (noting that courts have discretion to "refuse[] to vacate a judgment where the moving party had apparently made a strategic decision to default."); *Action S .A. v. Marc Rich & Co.*, 951 F.2d 504, 507 (2d Cir.1991) ("A default should not be set aside when it is found to be willful.").

The facts here demonstrate that Obiakor is an "obstructionist adversary," making this a case in which "[d]efault procedures . . . provide a useful remedy" for the willful failure to

---

[6] The Second Circuit has held that a defaulting defendant's failure to demonstrate the existence of a meritorious defense, standing alone, is a sufficient reason to deny the motion to vacate the entry of default. *See Sony Corp. v. Elm State Elecs., Inc.*, 800 F.2d 317, 320 (2d Cir. 1980). However, it has not held that the presence of a meritorious defense, standing alone, compels the district court to vacate a willful default.

14

answer a complaint despite having actual notice of the proceedings. *Enron*, 10 F.3d at 96. Although entry of default is a severe sanction, I conclude that it is justified under these circumstances.

E.     *Conclusion*

    For the forgoing reasons, the motion to vacate the entry of default is denied. Entry of judgment is deferred pending an inquest on damages, and the case is referred to Judge Go for a report and recommendation on that issue.

    So ordered.

                                                         _____
                                                      John Gleeson, U.S.D.J.

Dated:  February 8, 2013
       Brooklyn, New York